# Yohe *against* Barnet.

Articles of copartnership between S. Y. and two others, stipulated that the latter should furnish $6000, that is to say, each of the two $3000, the profits and losses to be divided equally among the three copartners, share and share alike. *Held*,

1. That as the consideration of S. Y.'s being entitled to one-third of the profits did not appear, it was matter of fact for the jury to determine, on oral evidence, of what it consisted, whether it was merely that he was to contribute one-third of the labour, or was to furnish skill, credit, attention and services, in carrying on the business.

2. If the two, under such agreement, besides capital, were to furnish their skill, attention, and services, and S. Y. only to give his attention, skill, and services, the question whether if a loss of capital occurred in the business, S. Y. is not bound to pay one-third of the deficiency, is also a matter of fact for the jury, and it is error for the court to decide it.

*Query*, whether on the face of such agreement merely, each partner, in case of a loss of capital, is not bound to contribute his proportion to make it good to the others.

In a suit by one partner against another to recover contribution to a loss in the concern, a statement in the defendant's handwriting of an account showing a balance due to the plaintiff from the firm, is evidence for the plaintiff.

So a statement by the plaintiff in the possession of the defendant showing how their matters of account stood between them, is evidence for the defendant.

III. — 11

So, also, an account by the defendant of cash paid for the firm, and of credits given, produced by him before arbitrators, and given in evidence to them by the consent of the plaintiff, who said he did not know whether the charges were right or not, but he would not object to them, *is* evidence for the defendant.

ERROR to the Common Pleas of *Northampton* county.

The plaintiff below and plaintiff in error, David Barnet, brought this action of account render against Samuel Yohe, to recover a balance alleged to be due to him as partner of the late firm of Yohe, Barnet & Co. There had been a previous partnership between the plaintiff and defendant, under the firm of Yohe and Barnet. Afterwards, a new partnership was formed between the plaintiff and defendant, and Theodore R. Sitgreaves, by a written paper containing certain stipulations, entered in the day-book of Yohe, Barnet & Co., in the defendant's handwriting, but not signed by the parties, as follows:

"Samuel Yohe, David Barnet, and Theodore R. Sitgreaves, have agreed to become copartners in the grocery, liquor, and wine business, to commence from the 14th of March 1833, and to continue for and during the full term of two years and six months, under the firm of Yohe, Barnet & Co.

David Barnet and Theodore R. Sitgreaves, agree to furnish $6000, that is to say, David Barnet $3000, and Theodore R. Sitgreaves $3000.

The profits and losses to be equally divided among the three copartners, Samuel Yohe, David Barnet, and Theodore R. Sitgreaves, share and share alike. The capital to be furnished on the 14th of March 1833."

The plaintiff alleged, that a loss had been sustained in conducting the business of the firm, whereby on the winding up his capital stock of $3000 paid in had been diminished; and he claimed to recover the one-third thereof from the defendant.

On the trial the plaintiff offered in evidence the bank-book of the firm to show that the funds of the firm were exhausted; to the admission of this the defendant objected, and the court overruled the evidence and sealed a bill of exception.

The plaintiff then offered in evidence the following statement, in the handwriting of the defendant; the admission of which was objected to, and it was rejected by the court; to which decision the plaintiff excepted:

*DR.*    *Yohe, Barnet & Co. in acct. with Yohe & Barnet,*    *CR.*

| To cash rec'd of sundries. $5,629.84 | By Cash paid sundries...$2,549.02 |
|---|---|
| Balance ............ 1,938.64 | Y & B ............ 1,142.13 |
| | $3,691.15 |
| | 1,938.69 |
| | $5,629.84 |

[Yohe v. Barnet.]

| | | | |
|---|---|---|---|
| To Balance ............ | $1,938.69 | | |
| Due to D. Barnet ..... | 2,606.34 | | |
| | $667.65 | | |
| Outstanding debts..... | $1,691.17 | Owes on book.......... | $700.00 |
| D. Barnet............ | 143.42 | M'Keen.............. | 70.00 |
| Seitz............... | 98.56 | D. Barnet............ | 1,938.69 |
| Yohe ............... | 49.81 | | |
| | $1,982.96 | | $2,708.69 |
| | | | 1,982.96 |
| | | Loss, | $725.73 |

The following memorandum, in the handwriting of the plaintiff, was then offered in evidence by the defendant:

### *David Barnet, DR.*

| | | |
|---|---|---|
| 1834, May 10.   To Cash ............................... | $170.00 |
| Check ................................................. | 104.23 |
| Cash draw ............................................. | 6.41 |
| Michael Weaver ....................................... | 29.43 |
| Check to Coyle ........................................ | 18.50 |
| Boyle ................................................. | 20.00 |

To the admission of which the plaintiff objected, and the same being admitted, he excepted.

The defendant further offered the private account of S. Yohe against the firm of Yohe & Barnet, containing sundry charges of cash paid for said firm:

DR. side amounting to ................................... $778.83
CR. side amounting to ................................... $755.48

To the admission of this the plaintiff objected; but the court overruled the objection, and the plaintiff excepted.

Previous to the offer of this evidence, a witness testified that he had been one of the arbitrators in this case.  In examining the account, there was no objection to the charges of cash, in Yohe's private account against Yohe & Barnet.  They went over them and added them up.  The only difficulty was in the addition.  On his cross-examination, he said he recollected Mr Barnet's saying, at the time, he did not know whether they were right or not; but he would not object to them.

The court charged the jury as follows:

A partnership was formed between Barnet, Sitgreaves and Yohe.  Barnet placed in the firm $3000, and Sitgreaves the same sum.  Yohe did not contribute anything but his credit, experience and attention.  It was agreed that the parties should share the profits, and bear an equal share of the loss.

The plaintiff contends that a loss has been sustained, and that including the business of the firm, his stock of $3000 has been diminished, and this action has been brought to recover the one-third of the loss from the defendant.

[Yohe v. Barnet.]

Whether there has been a loss or not, is a fact that you will determine from the evidence. If you shall be satisfied that the plaintiff's share of the stock has been diminished, then the question is presented, is the defendant bound in law to make good to him the one-third of this deficiency? This is a question of law; and no case has been furnished us, in which it has been decided in our courts. From this fact I am inclined to think it is a new point in this country. In the absence of precedent, we must resort to principle and elementary authority.

That a partnership may be formed, the one partner contributing money, and the other labour and skill and experience, cannot be doubted. We see it done every day. When money is contributed by one, and labour, experience and time by another, on closing the concern, the latter would not be permitted to take a part of the money put in as stock by the other. He would be entitled to his share of the profit that would be made of the money and labour thus united, but he would not be owner of any part of the money. The labour, skill, credit and experience only would be his. If the money is not his, it will appear difficult to show how and why he is liable for its risk, as between himself and his partner. If no gain is made, he would not call upon his partner to compensate him for his time, labour, credit and experience, in the absence of all contract to that effect. He put this to risk. The peril was his, and his partner had not insured against loss. The one contributes money; this is his share in the concern. The other, against this, contributes care and skill and credit; this is his share in the concern. If one loses his money, the other loses his labour, time and experience. It is to be supposed, unless it is agreed otherwise, that the partners consider the time, credit and experience of the one, equal in value to the money of the other. It is often fully equal in value, and made to supply its place. I should think it was always intended to supply its place, as being of equal value, except the contrary appears from an agreement between the parties. I do not think the contract of the parties, in this case, varies the right of the plaintiff, or liability of the defendant, as to this point; and therefore the defendant is not bound to pay to the plaintiff the one-third of the supposed deficiency.

To this charge the plaintiff excepted.

Errors assigned:

1. The court erred in rejecting the evidence mentioned in the first bill of exception.

2. In rejecting the evidence mentioned in the second bill of exception.

3. In receiving the evidence mentioned in the third bill of exception.

4. In receiving the evidence mentioned in the fourth bill of exception.

5. In their charge to the jury.

[Yohe v. Barnet.]

1st. In deciding the fact, instead of submitting it to the jury, that Yohe contributed his credit, experience and attention.

2d. In all that the court said in relation to the rights and liabilities of partners, where one or more of them put in money, and the other does not.

3d. In deciding the question of fact that the defendant in ths case was not bound to pay to the plaintiff the one-third of the supposed deficiency.

4th. In charging the jury upon the construction of the stipulations of partnership, and the liabilities of the partners to each other.

*Reeder* and *Porter* for the plaintiff in error, withdrew the first error, as the same matter was afterwards in evidence.

2. This statement was improperly rejected. It was clearly evidence, and no reason was given for rejecting it but that it had no date. It was an admission by the defendant, that the first firm owed the second firm $2606.34; and also of another fact, that there was a loss in the second firm, which was the great subject of dispute. It showed further that the defendant owed $49.81 to the second firm, whereas he afterwards alleged they owed him. They cited 2 *Whart.* 410; 1 *Dall.* 486.

3. If the statement was rejected, certainly this memorandum ought to have been, for it stood on the same footing. It did not even appear to relate to the firm. Three only of the entries did in fact relate to the firm.

4. This evidence was received on the ground of its having been admitted before the arbitrators. But this was not the case. The furthest that was proved was, that there was no objection to it.

5. The principles laid down by the court in their charge to the jury are erroneous. The court assumed that Yohe contributed skill and extraordinary services; but there was no agreement for that, nor is there proof that he had more skill than his partners. The others equally contributed their services, and therefore ought to have their capital safe. By the written agreement of partnership, the losses are to be equally divided. Loss means diminution of capital caused by the prosecution of the business of the partnership. This is what the parties understood by it; and by the law of partnership, each participator in the profits is equally liable for all losses which may be incurred. *Gow on Partn.* 9, 11, 16. And if the parties are not equally liable, then we contend it must be left to the jury to say which was to furnish labour and services, and what proportion the labour and services of Yohe bore to the money of the others, and distribute the loss accordingly. They cited 19 *Vez.* 291; 18 *Vez.* 300; *Cooper's Justinian, b.* 3, *c.* 26, *sec.* 2; *Collyer Part.* 84.

III.— H

[Yohe v. Barnet.]

*Brown* and *Hepburn, contra.*

2. The paper offered was an unfinished paper—a mere essay— the sweepings of the counting-house. It does not agree with the books. In *Thompson* v. *M'Kelvey*, (13 *S. & R.* 127), unconnected scraps of paper containing accounts irregularly kept on their face, were held not to be admissible as a book of original entries. This paper bore no date, and no account was given of it. A paper unintelligible without explanation, is not admissible as a book of original entries. *Hough* v. *Doyle*, (4 *Rawle* 294.) They also cited 2 *Watts* 338; 1 *Wash. C. C. Rep.* 156.

3. This was found written on the back of an account of Yohe & Barnet with another person, and produced from among the papers of the firm. On the back of it was an entry by the plaintiff. Three items of it were previously shown to be correct.

4. There was evidence sufficient to go to the jury for them to say whether it was admitted before the arbitrators; 6 *S. & R.* 15; 12 *S. & R.* 238; 1 *Penn. Rep.* 415.

5. As to the charge of the court, the principles laid down are correct. From the nature of the contract, and the stipulations of the parties, the defendant was to furnish the services and the plaintiff money. The defendant was bound to do this, and if he had refused or neglected, would certainly have been responsible under this agreement. The others were not bound to render their services, besides furnishing the entire capital stock of the firm. By the terms of the agreement, the contributions of the parties were considered equal, inasmuch as it is agreed that the profits and losses shall be equally divided. Then what is meant by saying that the loss shall be equally divided? Not the loss of what each contributed, but the loss beyond that. The money brought in is not a loan, but an investment. It is not a joint ownership of a chattel which each is bound to repair. The losses are not to be shared till the capital is exhausted. If all the $6000 had been sunk, and still $1000 was due to creditors, the partners must equally bear that. The doctrine laid down by the court below, is fully sustained by the authorities. Puffendorff, in his *Treatise on the Law of Nature and Nations, book* 5, *c.* 8, *sec.* 8, says, that when in a partnership labour is contributed on one side, and only the use of money on the other, he who contributed the money does not admit the other to a share in the principal, but only to his proportion of the gain that may be made of the money and labour joined together. And in this case, as he that contributed only labour has no title to any part of the money, when they break off the partnership, so the other alone, as owner, is concerned in the risk that the money is exposed to. And in such a partnership as this, not the money itself, but the risk that it runs and the gain that may probably be expected from it, is compared with the labour. And therefore when the gain is to be proportioned, we must not compare the labour with the principal, (as if one having

[Yohe v. Barnet.]

contributed work to the value of £100, and the other £1000 in money, the former were to receive only a tenth part of the gain), but to the risk and hazard the money is exposed to, which if computed to be worth £100, each party shall gain equally. This doctrine is cited in *Watson on Partnership* 57, as the law of England, and referred to in 3 *Kent's Com.* 24. Indeed the question commonly raised is, whether the partner contributing labour is not entitled to a portion of the capital. *Collyer on Part.* 82, 84, 86; 5 *Taunt.* 74; *Wats. on Part.* 42. But it has not been doubted that in such a partnership, while the labour is risked on one side, so is the money on the other; and in case of loss, the one loses his labour, and the other his money.

The opinion of the Court was delivered by

KENNEDY J. — The first error, which is a bill of exception to the opinion of the court below, rejecting the bank-book of the firm, offered as evidence, to show that the funds of the firm were exhausted, was abandoned.

The *second* error, however, is relied on. It is also a bill of exception to the opinion of the court, rejecting the statement of an account, in the handwriting of the defendant, between the firm of Yohe, Barnet & Co., and Yohe and Barnet, showing a balance to be due by the former firm to the latter, of $1938.64, which is deducted from the sum of $2606.34, stated to be due to the plaintiff, and showing also according to a further statement there made a loss of $725.73. Now seeing this action has been brought to recover from the defendant, contribution to a loss, which the plaintiff alleges has accrued in carrying on their business as copartners in trade, and has fallen entirely upon him, it would rather seem that this statement, which was offered in evidence by the plaintiff, had some relation to the business in which it is alleged the loss has accrued, and might very possibly therefore have some bearing and influence in determining the issue between the parties; and being a statement made by the defendant himself in his own handwriting, it is reasonable to presume, if it be against his interest, that it is true; and, therefore, we think it ought to have been received in evidence, so that it might have gone to the jury for what it should appear to have been worth, after all the evidence on both sides was heard.

The *third* error, which is likewise a bill of exceptions to evidence, is also insisted on. The evidence, mentioned in this bill was offered by the defendant. It consisted of a statement in writing made by the plaintiff, admitting his indebtedness, without stating to whom, for cash received at various times, as also his liability for various items on account of other persons therein set forth. It was objected to by the plaintiff, but received by the court. This paper being in the possession of the defendant, and produced by him, raised the presumption that it was delivered

[Yohe v. Barnet.]

to him by the plaintiff for the purpose of showing how their mat-
ters of account stood between them, and therefore was admissible
as evidence to go to the jury, to prove the indebtedness of the
plaintiff to the defendant, unless the tendency of it, in this respect,
was repelled or explained away by other evidence.

The *fourth* error is likewise a bill of exception to the opinion
of the court, admitting evidence, offered by the defendant, but
objected to by the plaintiff. It was an account charged by
the defendant himself, in his own private book, of cash paid for
the firm, amounting to $778.83, and of credits given, for $755.48.
It was first proved, however, that when this cause was on trial
previously before arbitrators, this same account was produced by
the defendant, and given in evidence to the arbitrators by the
consent of the plaintiff, who said at the time, he did not know
whether the charges contained in it were right or not, but he would
not object to it. Although what was said by the plaintiff in regard
to the charges contained in this account, can scarcely be said to
be a full admission on his part of their correctness, yet it was, per-
haps, right to let the matter go to the jury, who might judge of
the plaintiff's motive for letting the account go in evidence to the
arbitrators. They might possibly think that he suffered it to go
to the arbitrators, because he thought there was nothing wrong in
it; especially was it right to receive it in evidence, as the plain-
tiff had no reason for objecting to its going to the jury, that was
not equally well known to him when he permitted it to go to the
arbitrators.

The fifth error is, that the court erred in charging the jury;
first, by assuming the fact, that the defendant, by the partnership
agreement, was not bound to furnish money as his portion of the
capital, but that it was to consist of labour, to be performed by
him in transacting the business of the partnership, in the applica-
tion of his skill and experience in such business, and in lending
his credit to it, so far as it might be requisite to promote the
interest of the partnership. It is certainly true, that the memo-
randum in writing, read to the jury as evidence of the partner-
ship agreement, showing, as it was thought, the terms and con-
ditions of it, does not mention or show what the defendant was to
furnish or supply, as capital, on his part, to the partnership. For
aught that appears therein, it may have been money, or labour,
skill and credit. This memorandum is in the following words:
" Samuel Yohe, David Barnet, and Theodore R. Sitgreaves, have
agreed to become copartners in the grocery, liquor, and wine busi-
ness, to commence from the 14th day of March 1833, and to con-
tinue for and during the full term of two years and six months,
under the firm of Yohe, Barnet & Co. David Barnet, and Theo-
dore R. Sitgreaves, to furnish $6000, that is to say, David Barnet
$3000, and Theodore R. Sitgreaves $3000. The profits and *losses*
to be *divided equally* among *the three copartners*, Samuel Yohe,

[Yohe v. Barnet.]

David Barnet, and Theodore R. Sitgreaves, share and share alike. The capital to be furnished on the 14th day of March 1833." This memorandum was not signed by the parties or any of them, but was in the handwriting of Samuel Yohe, the defendant, and entered in the day-book of the firm of Yohe, Barnet & Co. It is evident that this memorandum, as an agreement, is imperfect, because it does not show what the defendant had done, or was to do, for and on account of which he was to become entitled to one-third of the profits which should be made. No consideration is mentioned on his part for such an advantage, unless, indeed, it be, that he should contribute in money one-third of any loss or losses, that should happen to accrue in carrying on the business. But this consideration alone is so grossly inadequate, that it is incredible it should have been the only one within the contemplation of the parties. There must therefore have been a further consideration, which does not appear on the face of the written memorandum, but may be come at by a careful consideration of the oral testimony. What it was, however, was a question of fact, which ought not to have been assumed by the court, but ought to have been submitted to the jury to be decided by them. And as it appeared from the evidence, that the defendant attended to purchasing goods for the firm, and occasionally to the selling of them, in the absence of one or both of the other partners; and as it does not appear that any complaint was ever made by the others that he had not furnished money as his proportion of the capital, it is highly probable that the jury would have come to the conclusion that he, by the agreement and understanding that existed between the parties, was not to furnish money as a further consideration to be added to the capital, that was to be employed in carrying on the business of the partnership, but was merely to give his credit, attention, skill and services to it, as it should be requisite in order to advance the common interest of all. But it belonged to the jury exclusively to draw this conclusion, and not to the court. We therefore think that the court erred on this point.

Some of the remaining exceptions to the charge of the court have been answered in what has been said on the exception just disposed of. It seems necessary, however, to notice the opinion of the court, in regard to the liability of the several partners of the firm to contribute to a loss sustained in carrying on the business of it where, for instance, it is agreed that two of three partners shall each furnish a certain sum of money as the capital to be employed in carrying on the business of the partnership, and likewise give their skill, attention and services towards carrying on and performing the requisite labour of it, and that the third shall only give his attention, skill and services to the business; and that the profits and *losses* shall be *equally divided* among the three. The opinion of the court was, that in such a case, the partner who

III. — 12     ң *

[Yohe v. Barnet.]

was not to advance money for the purpose of making up the capital with which the business was to be carried on, was not bound to contribute money to make good any loss that might be incurred; unless it were otherwise expressly agreed by the parties; and conceiving that the defendant here was only bound, at most, to give his skill, credit, labour and services to the business of the partnership, without any express stipulation to contribute, in money, his one-third of any loss that might happen, directed the jury, therefore, that he was not bound to pay to the plaintiff the one-third of the supposed deficiency. The direction of the court to the jury, in this particular, was certainly such as to take from their consideration every fact involved in the point: But whether the defendant had not expressly, or at least by necessary implication, agreed to contribute his one-third in money, to make good any loss that might accrue, was a question of fact, which, we think, ought to have been left by the court to the decision of the jury. It was not to be determined from the written memorandum alone, which doubtless contained their agreement in part, but from that, taken in connection with the whole of the oral testimony that was given on the trial. Indeed, I am far from being satisfied that the written memorandum does not go to show that it was the intention of the parties that, in case of loss, each should contribute his proportion, say one-third thereof, in money; for the words of it are; " the *profits* and *losses* to be *divided equally* between the *three co-partners, share* and *share alike.*" Now it must be observed, here, that the profits and losses are coupled together, and to be shared in like manner. That the profits, if they consisted of money, were to be divided and shared in money, equally between the three, will not, I think, be denied; and why shall not the losses, if they consist of money, be divided and shared equally also, in like manner, that is, in money, between the three ? But, at all events; it was a question of fact, which ought to have been submitted by the court to the jury, to be determined by them according to the intention of the parties, as collected from the whole of the testimony.

The judgment is, therefore, reversed, and a *venire de novo* awarded.